**WILLIG, WILLIAMS & DAVIDSON**
Ryan Allen Hancock
Attorney I.D. No. 92590
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Telephone: (215) 656-3679
Facsimile: (215) 561-5135
Email:  rhancock@wwdlaw.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUSAN KRUTH, | |
| Plaintiff, | **CIVIL ACTION NO.** |
| v. | **DEMAND FOR JURY TRIAL** |
| THE FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, | |
| Defendant. | |

**CIVIL ACTION COMPLAINT**

Plaintiff, Susan Kruth (hereinafter "Plaintiff" or "Ms. Kruth"), by and through her counsel, brings this civil action against the Defendant, the Foundation for Individual Rights in Education (hereinafter "Defendant" or "FIRE"), seeking all available remedies under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), § 5(a) and (d) of the Pennsylvania Human Relations Act, 43 P. S. § § 951-963 ("PHRA"), and Philadelphia's Fair Practices Ordinance ("PFPO"), Section 9-1101 *et seq*.[1] Specifically, Plaintiff seeks all damages,

---

[1] Plaintiff's claims under the PHRA and PFPO are referenced herein for notice purposes. Ms. Kruth is required to wait one year before initiating a lawsuit from date of dual filing an

including economic loss, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deem appropriate.

## PARTIES

1.      Plaintiff, Susan Kruth, is a female individual, residing in Philadelphia, PA. Plaintiff worked for FIRE as the Director of Procedural Advocacy.

2.      Defendant FIRE maintains its headquarters at 510 Walnut Street, Suite 1250, Philadelphia, PA 19106.

3.      Defendant FIRE has been assigned Entity No. 2903606 by the Pennsylvania Department of State.

4.      Defendant is non-profit provider of legal services whose mission is "to defend and sustain the individual rights of students and faculty members at America's colleges and universities. These rights include freedom of speech, freedom of association, due process, legal equality, religious liberty, and sanctity of conscience…"

5.      At all relevant times, Defendant was an "employer" for purposes of Title VII, PHRA, and Philadelphia's Fair Practices Ordinance.

6.      At all times relevant hereto, Plaintiff was employed by the Defendant.

7.      At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of which acted within the scope of his or her job responsibilities.

## JURISDICTION AND VENUE

8.      The foregoing paragraphs are incorporated by reference herein as if the same were

---

administrative complaint with the Equal Employment Opportunities Commission. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under Title VII. Plaintiff's PHRA and PFPO claims however will mirror identically her federal claims under Title VII.

set forth at length.

9.      This Court has original subject matter jurisdiction over Ms. Kruth's Title VII claims pursuant 28 U.S.C. § 1331.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

11.      This Court has personal jurisdiction over this matter because the Defendant is located in this District, conducts substantial business activity in this District, and because many of the unlawful acts described herein occurred in this District and gave rise to the claims alleged.

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

12.      The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

13.      Plaintiff has fully exhausted her administrative remedies under Title VII.

14.      Plaintiff dual filed an administrative Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"), the Pennsylvania Human Relations Commission (hereinafter "PHRC"), and the Philadelphia Commission on Human Relations ("PCHR"). The EEOC assigned the Charge of Discrimination No. 530-2021-03354, a true and correct copy of which is attached hereto as Exhibit "A," complaining of sex and retaliation discrimination as set forth herein.

15.      On or about June 1, 2021, the EEOC issued to Plaintiff a notice of right to sue, a true and correct copy of which is attached hereto as Exhibit "B."

16.      Plaintiff files this Complaint within ninety (90) days of receipt of the notice of right to sue letter relative to Charge No. 530-2021-03354.

17.     Accordingly, Plaintiff has fully complied with all Title VII administrative prerequisites for the commencement of this action.

18.     Plaintiff shall move to amend this Complaint to add her claims under the PHRA and PFPO after administratively exhausting their prerequisites. Plaintiff's PHRA and PFPO claims however will mirror identically her federal claims.

## STATEMENT OF FACTS

19.     The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

20.     On or about March 2013, Ms. Kruth was hired as a Program Officer in FIRE's Individual Rights Defense Program by Defendant FIRE.

21.     During her employment with FIRE, Ms. Kruth was regularly promoted.

22.     On or about June 2015, Ms. Kruth was promoted to Senior Program Officer in FIRE's Legal and Public Advocacy program.

23.     On or about November 2017, Ms. Kruth was promoted to Staff Attorney in FIRE's Stand Up for Speech Litigation project.

24.     On or about June 2018, Ms. Kruth was promoted to Senior Program Manager in FIRE's Legal and Public Advocacy program.

25.     On or about April 2020, Ms. Kruth was promoted to Director of FIRE's Procedural Advocacy program.

26.     At all times relevant to her Complaint, Ms. Kruth reported to and worked out of FIRE's Philadelphia office.

27.     At all times relevant to her Complaint, Ms. Kruth reported directly to William Creeley, FIRE's Legal Director and Robert Shibley, FIRE's Executive Director.

28.     William Creeley and Robert Shibley had and continue to have the authority to hire, discipline, and terminate FIRE employees. In other words, they have the authority to carry out tangible employment actions against Defendant FIRE employees.

29.     At all times relevant to her Complaint, Ms. Kruth completed her job duties in a satisfactory manner.

30.     In fact, in July 2020, shortly before her termination, FIRE stated "Susan's transition to Director of Procedural Advocacy has been seamless and straightforward. She has quietly and effectively met her responsibilities -- a testament to her ability, given the extraordinary circumstances dictated by the pandemic. She has continued to perform thorough, thoughtful work in fulfillment of her range of duties."

31.     During her employment, Ms. Kruth never received any disciplinary actions for her job performance.

32.     During her employment, Ms. Kruth was subjected to different treatment because of her sex, female.

33.     During her employment, Ms. Kruth also witnessed first-hand, other female employees be subjected to different treatment than similarly-situated men because of their sex.

34.     FIRE routinely excluded women employees from meetings, despite their expertise and job roles being directly related to a given project.

35.     For example, Ms. Kruth was not invited to multiple meetings which directly impacted her work while similarly-situated men were.  When FIRE filed litigation pertaining to Title IX and due process issues, which would directly affect her work, neither Ms. Kruth nor the female Director of Litigation was informed in advance of the filing. Rather, senior male employees

completed the project without Ms. Kruth and the female Director of Litigation participating. Male employees were consistently included in relevant projects; females were not.

36.     FIRE routinely penalizes women for their "tone" when they are merely speaking straightforwardly or being inquisitive while it routinely ignores similarly-situated men speaking with open hostility and name-calling directed at women.

37.     In several formal reviews, Ms. Kruth's supervisor stated that she was not paid more or promoted because of her "attitude" or "tone" even though her supervisor did not and could not cite any instances of wrongdoing by Ms. Kruth.

38.     Interestingly, in the only two formal reviews conducted by her female supervisor, there were no remarks about any alleged inappropriate tone or attitude.

39.     In contrast, numerous male employees routinely spoke rudely and condescendingly to Ms. Kruth and other women in the workplace. The male employees did so without repercussions, even when it was brought to the attention of their supervisor or management.

40.     For example, in 2014, FIRE's then-Vice President of Operations Sean Clark repeatedly made disparaging comments to Ms. Kruth about the blog, which Ms. Kruth managed at the time and for which she received consistent praise from her supervisors. Ms. Kruth complained to her direct supervisor Will Creeley, FIRE's Legal Director, about these remarks. To her knowledge, no action was taken at that time, and Clark continued to routinely disrespect Ms. Kruth and other female staff members.

41.     The different treatment of female employees flowed from the top of FIRE's executive team.

42.     For example, Executive Director Shibley routinely made rude, offensive and stereotypical comments about women. Executive Director Shibley stated that women shouldn't be

able to vote and joked in an email about raping his wife. Executive Director Shibley also remarked that "all the women are asking for raises" but would not comment when asked if women employed by FIRE were paid similarly to men.

43.     In fact, any opposition to different treatment in the workplace was met with hostility, contempt, inaction and eventually the termination of Ms. Kruth's employment.

44.     Male employees who have engaged in sexual harassment and/or different treatment of women in FIRE's workplace are often promoted and given raises. For example, a staff member who was then Communications & Media Relations Coordinator engaged in unwanted sexual touching of female employees at FIRE's Christmas party. FIRE took no serious punitive action against the employee. In fact, he was allowed to voluntarily resign and then was invited back into a leadership role after a few months where he remains today.

45.     For another example, when Ms. Kruth objected to the rape joke, Executive Director Shibley stated that it wasn't reasonable for Ms. Kruth to be "uncomfortable" about the rape joke.

46.     Will Creeley, FIRE's Legal Director told Ms. Kruth that Shibley reacted that way because he was afraid that Ms. Kruth was going to sue him for sexual harassment.

47.     On or about October 2020, FIRE hired a new Human Resource Manager ("HR").

48.     On or about December 2020, Ms. Kruth complained to the new HR Manager that she and other women at FIRE were being mistreated because of their sex.

49.     This wasn't the first time that Ms. Kruth complained to either her direct supervisor or HR that she and other women at FIRE were being treated differently because of their sex.

50.     In November 2020, FIRE completed a year-long survey project in which FIRE asked their employees to complete an "anonymous" survey about working conditions at FIRE. Ms.

Kruth took the opportunity to complain about how women were treated differently than similarly-situated males at FIRE.

51.     Ms. Kruth's made clear that her unhappiness" was related to unfair/disparate treatment of women in FIRE's workplace.

52.     On February 11, 2021, Ms. Kruth, shortly after her internal complaints to the new HR Manager and responses to the "anonymous" survey, was terminated from her employment.

53.     Ms. Kruth was told that she was being terminated because she was "unhappy."

54.     Ms. Kruth was terminated without notice and her termination was not based on her work performance.

55.     FIRE had not terminated any male employees who did not have work performance issues, even though many male employees had expressed unhappiness.

56.     Male employees with work performance issues were given opportunities to improve their performance or given an opportunity to secure another job.

57.     On information and belief, Ms. Kruth's direct supervisors at the time were not aware that she was going to be terminated in advance and they did not express any issues with her work performance.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Defendant's Violation of Title VII**
**42 U.S.C.S. § 2000e-(a)(1)**
**Different Treatment/Termination**

58.     Ms. Kruth incorporates the preceding paragraphs and sets forth more fully at length herein.

59.     Ms. Kruth is a female individual within the meaning of Title VII.

60.     Ms. Kruth, as described more fully below, was treated differently because of her sex, female.

61.     Ms. Kruth witnessed other women be treated differently because of their sex, female.

62.     Ms. Kruth's disparate treatment led to her termination because of her sex, female.

63.     No legitimate, non-discriminatory reason exists for Ms. Kruth's termination.

64.     Ms. Kruth was terminated from her employment in violation of Title VII.

65.     Defendant acted with malice or a reckless indifference to Ms. Kruth's rights, thereby warranting the imposition of punitive damages.

**WHEREFORE**, Ms. Kruth seeks the damages sets forth in the Prayer for Relief of this Complaint.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Defendant's Violation of Title VII**
**42 U.S.C. § 2000e-3(a)**
**Retaliation**

66. Ms. Kruth incorporates the preceding paragraphs and sets forth more fully at length herein.

67. Ms. Kruth engaged in protected activity.

68. Specifically, she opposed different treatment based upon sex in FIRE's workplace.

69. Defendant failed to remedy the different treatment based upon sex in FIRE's workplace and terminated her employment for pretextual reasons.

70. There is a causal connection between Ms. Kruth's opposition to FIRE's different treatment based upon sex and her termination.

71. No legitimate, non-discriminatory reason exists for Ms. Kruth's termination.

72. Ms. Kruth was terminated from her employment in retaliation for opposing different treatment based upon sex in FIRE's workplace in violation of Title VII.

73. Defendant acted with malice or a reckless indifference to Ms. Kruth's rights, thereby warranting the imposition of punitive damages.

**WHEREFORE**, Ms. Kruth seeks the damages sets forth in the Prayer for Relief of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Susan Kruth, prays for relief as follows:

(a) Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

(b) Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay, and benefits Plaintiff would have received had it not been for Defendant's illegal action, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

(c) Compensatory damages;

(d) Punitive damages under Title VII;

(e) Liquidated damages;

(f) Emotional pain and suffering;

(g) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which violate Title VII, PHRA and Philadelphia's Fair Practice Ordinance.

(h) An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(i) Pre-judgment and post-judgment interest, as provided by law; and

(j) Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Kruth demands a trial by jury in this action.

Respectfully submitted,

By: _____

**WILLIG, WILLIAMS & DAVIDSON**
Ryan Allen Hancock
Attorney I.D. No. 92590
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Telephone: (215) 656-3679
Facsimile: (215) 561-5135
Email:  rhancock@wwdlaw.com

*Counsel for Plaintiff*

Dated:  August 23, 2021

11