# EXHIBIT A

EEOC Form 5 (11/09)

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

Pennsylvania Human Relations Commission, Philadelphia Commission on Human Relations  and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Susan Kruth | 8609955007 | 11/28/1985 |

Street Address: 1318 S. Reese Street, Philadelphia, PA 19147

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| The Foundation for Individual Rights in Education ("FIRE") | 50+ | 2157173473 |

Street Address: 510 Walnut Street, Suite 1250, Philadelphia, PA 19106

DISCRIMINATION BASED ON (Check appropriate box(es).)
☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest:   Latest: 02/11/2021
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Susan Kruth ("Complainant") files this Charge of Discrimination alleging that the Foundation for Indivdual Rights in Education ("FIRE" and/or "Respondent") discriminated against her by terminating her employment because of her sex (female) and in retaliation for opposing an unlawful act in violation of Title VII, 42 U.S.C. §2000e-2(a)(1) and 3(a), § 5(a) and (d) the Pennsylvania Human Relations, 43 P.S. §§ 951-963, and Philadelphia's Fair Practice Ordinance, Section 9-1101 et seq. as described more fully in the attached document.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

May 12, 2021
Date / Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☐ EEOC | Agency(ies) Charge No(s): |
|---|---|---|
| | | and EEOC |

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          Charging Party Signature | |

Susan Kruth v. Foundation for Individual Rights in Education                              1

Attachment to EEOC Charge

The Foundation for Individual Rights in Education ("FIRE") terminated Complainant after she complained about its history of treating her and other female employees differently from male employees. Complainant alleges that she was terminated in retaliation because of her complaint of disparate treatment of female employees that was not applied to her male co-workers.  Complainant's termination was completely without notice and was not based on her work performance.

FIRE routinely penalizes women for their "tone" when they are merely speaking straightforwardly or being inquisitive while it routinely ignores men speaking with open hostility and name-calling directed at women. In multiple reviews by Complainant's supervisors, she was told that her "attitude" was the reason she was not being paid more, promoted more, or put in a management position, even though her supervisor did not cite any instances of wrongdoing when she requested he do so.

In contrast, numerous male employees routinely spoke rudely and condescendingly to Complainant and other women, including when Complainant was senior to them in the organization.  The males did this without repercussions, even when it was brought to the attention of their supervisor or management.  Even Executive Director Shibley routinely made rude and offensive remarks about women. For example, Shibley stated that women shouldn't be able to vote; made a joke in a private email to Complainant about raping his wife and when Complainant objected, told her it wasn't reasonable for her to be offended; and complained to her that "all the women are asking for raises" but would not comment when asked if women were being paid similarly to men.

Even more substantial misconduct did not deter supervisors giving male employees promotions and raises. For example, the male employee responsible for the most blatant sexual misconduct Complainant can recall during her time at FIRE has been promoted rapidly since the misconduct and now sits near the top of the organizational ladder with a large department under him. He voluntarily left FIRE following his unwanted sexual touching of female employees at a company Christmas party.  Within months of voluntarily leaving, he was invited back into a leadership role.

On many occasions, FIRE did not invite female employees to meetings or provide updates, despite their expertise and job roles being directly related to a given project. For example, for approximately six years, Complainant was one of two employees who focused mainly on Title IX and due process issues. She was not invited to multiple meetings among men to plan work relating to that topic. When FIRE filed

litigation pertaining to Title IX and due process issues, which would directly affect her work, neither Complainant nor the female director of litigation was informed in advance of the filing. Rather, senior male employees completed the project without Complainant and the female director of litigation participating. Male employees were consistently included in relevant projects, females were not.

This and other instances of disparate treatment of women at FIRE led Complainant to complain to FIRE's HR manager, Cait Scanlan, in December 2020. It was not the first time she had complained to managers and HR about sexism at FIRE, but it was the first time she complained of sexism to Scanlan, who had recently joined FIRE. Two months later, Complainant was terminated with no notice, effective immediately, and told it was a result of her unhappiness working at FIRE. In other words, she was fired for voicing her displeasure of the unequal treatment based upon sex in the work place. On information and belief, Scanlan did not investigate any of her claims.

For more than a year before Complainant was terminated, and through several formal and informal reviews and check-ins with her supervisors, Complainant was only given positive feedback, often glowing praise. For several years before that, her reviews were overwhelmingly positive except for a note to "continue to be mindful of [her] interactions with colleagues," although her supervisor conceded that this note was a formality and she hadn't mishandled any interactions with colleagues in recent years. Even in the earlier reviews where Complainant's "tone" was supposedly an issue, work performance was consistently deemed excellent. In the only two formal reviews by a female supervisor, there were no remarks about any alleged inappropriate tone. In other words, the Complainant completed her tasks in a satisfactory manner and was only terminated after she made an internal complaint to Scanlan that she was unhappy with the disparate treatment of female FIRE employees.

While Complainant was supposedly fired for being allegedly "unhappy," many staff members had been openly unhappy at FIRE for years. FIRE's previous HR manager conceded morale was awful in the years leading up to her leaving. FIRE conducted company-wide, monthly engagement surveys throughout 2020 in a purported attempt to improve employee morale. While Complainant didn't have access to the comments of other employees, the numerical results everyone had access to made clear that many employees at FIRE were unhappy with and distrusting of leadership. Complainant had also complained of sexism in the surveys and had encouraged Scanlan during their meeting in December 2020 to read through everyone's comments for a sense of why a significant number of employees were not happy at FIRE. Outside of the survey context, several male employees expressed their discontent with

management regularly and were known for their open and frequent grumpiness ("Will's grumpy today" was a common remark around the office). While this was apparently not worth addressing, Complainant's quiet state of unhappiness (again, largely because of the prevalent sexism and FIRE's unwillingness to address it) was supposedly enough to warrant termination even after nearly a year of working remotely with no opportunities for co-workers to even accidentally observe her in a state of alleged unhappiness.

During Complainant's employment at FIRE, four (4) male employees were permitted to take weeks or months off in order to address mental health and/or substance abuse problems. They returned to their positions at FIRE, despite performance issues in the weeks or months leading up to their leave. Two (2) of the four (4) employees were eventually either terminated or asked to leave. To Complainant's knowledge, no female employees had taken similar time off while she was at FIRE. Had Complainant's alleged unhappiness been an actual problem which interfered with her work performance (which it did not) and had she been given the same opportunity as the male co-workers had received, she could have taken a few months off to work on her mental health and returned to work renewed. Complainant was not given that opportunity because women at FIRE are treated differently than the men and because the assertion that she was problematically unhappy was merely a pretext for FIRE's retaliation against her.

Moreover, during Complainant's employment at FIRE, there has never been a male co-worker who was fired without repeated warnings of wrongdoing or performance issues over weeks, months, or even years, with the exception of one male employee who committed an obvious fireable offense (deleting a huge amount of unrecoverable information and then hiding it for weeks). As a result, terminated male employees had ample time to either fix their problems or find another job. The Complainant was not given that courtesy or opportunity.

In another instance, there was a male employee who frequently derailed email discussions with irrelevant rants, picked fights with more senior employees, and was unable to competently complete assignments. He was relatively new and behaved this way for the entirety of his employment. Even after complaints from employees across the company and repeated warnings, Complainant overheard an extensive conversation between him and Shibley in which he was given the opportunity to advocate keeping his job. He was fired shortly thereafter, but not immediately; unlike Complainant, he was at least given the opportunity to change his behavior.

In contrast, Complainant, after eight (8) years of work that FIRE consistently recognized as excellent, was not offered a single opportunity to speak in her own

defense against the supposed, critical problem of her being "unhappy" (related to the ongoing sexism at FIRE). Instead, she was completely cut off from her work email and computer within minutes of being informed of the "problem." Neither of Complainant's two (2) current direct supervisors at the time, Azhar Majeed or Molly Nocheck, were informed in advance that there was any problem with Complainant, much less that she would be terminated, which to Complainant's knowledge has not been the case with any other terminated employee at FIRE.

It is inconceivable that a well-funded, nonprofit organization that specifically boasts a high retention rate would fire a veteran, high-performing employee in the middle of a pandemic with no notice and no opportunity to conclude projects, simply for being "unhappy." Instead, Complainant was terminated in retaliation for pushing back against a pattern and practice of discrimination based on sex. Even if her unhappiness were the actual reason for Complainant's termination, FIRE's implementation of a rigid standard with a female employee was in direct contrast to its lack of standards imposed on the multiple openly-unhappy male employees, or male employees whose poor performance and misbehavior was given long periods of time to plan and improve.

As a result of the termination from FIRE, Complainant was completely unemployed for two (2) months. While she is now employed, she has suffered and will continue to suffer financial loss of approximately $40,000 per year.

I declare under penalty of perjury that the above is true and correct.

Date: May 12, 2021

_____
Susan Kruth